Daniel E. Williams, ISB No. 3920
Erika P. Judd, ISB No. 8241
Cody J. Witko, ISB 10427
JONES WILLIAMS FUHRMAN GOURLEY, P.A.
The 9th & Idaho Center
225 North 9th Street, Suite 820
P.O. Box 1097
Boise, ID  83701
Telephone: (208) 331-1170
Facsimile: (208) 331-1529
Email:  dwilliams@idalaw.com
          ejudd@idalaw.com
          cwitko@idalaw.com

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS RAY FLEMING, an individual,<br><br>               Plaintiff,<br><br>vs.<br><br>CITY OF BOISE, a municipality and/or political subdivision of the State of Idaho,<br><br>               Defendant. | Case No. 1:22-cv-00519-BLW-CWD<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

### I. INTRODUCTION & RELIEF REQUESTED

This case arises out of Plaintiff Thomas Fleming's after-the-fact assertions that he was discriminated against and constructively discharged from his employment as a high-ranking Boise Police Department (BPD) employee.  Fleming retired from his position with the City on or about July 15, 2022.  Six months later, Fleming filed his complaint in state court alleging that the City violated the Idaho Protection of Public Employee's Act ("Whistleblower Statute"). On November 28, 2022, Fleming amended his complaint to

assert additional claims arising out of state and federal anti-discrimination laws.  The City removed the lawsuit to federal court on December 20, 2022.

Fleming's claims in this action are based on allegations that former Boise Police Department Chief Ryan Lee: (1) interfered in BPD investigations and impaired the documentation, report, and investigation of violations of law, rules, and regulations, in violation of the Whistleblower Statute; (2) retaliated against Fleming for participating in investigations of Lee and BPD; and (3) discriminated against Fleming based on an alleged disability and Fleming's age, in violation of the Americans with Disabilities Act (ADA), the Idaho Human Rights Act (IHRA), and the Age Discrimination in Employment Act (ADEA).  Though not pled as a claim for relief, Fleming's Complaint also states that Lee created a hostile work environment that was so pervasive and oppressive that Fleming was forced to resign his position with the City.

The undisputed truth, however, is that Fleming was offered a job at Boise State University, calculated his retirement options, and elected to retire to pursue another opportunity where he could collect his PERSI retirement benefits as well as a secondary income with additional retirement benefits.

Fleming's Complaint is largely focused on irrelevant collateral issues and unrelated complaints or grievances by other City employees relating to Chief Lee. Fleming wrongly speculates that Lee acted to enforce some sort of agenda against him without evidence to support that conclusion other than sparse stray comments. Fleming's burden in seeking to hold the City liable for adverse action in the form of constructive discharge, whether under the Whistleblower Act, ADA, ADEA, or the IHRA is high. The undisputed evidence shows he cannot, even with the benefit of all reasonable inferences,

meet that burden. As discussed in detail, all four of these causes of action fail as a matter

of law for want of genuine, triable issues of fact with respect to at least one, if not

multiple elements upon which Plaintiff bears the burden of proof.  Thus, the City

respectfully requests the Court enter summary judgment dismissing Plaintiff's Complaint.

### III. LEGAL STANDARD

Under Rule 56, Federal Rules of Civil Procedure, the "mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 247-48 (1986). Instead, "only material factual disputes preclude summary judgment;

factual disputes about immaterial terms are irrelevant." *Hall v. Bellmon*, 935 F.2d 1106,

1111 (10th Cir. 1991) (quoting *Anderson*, 477 U.S. at 248). The substantive law of a case

determines which facts are material. *United States v. Simons*, 129 F.3d 1386, 1388 (10th

Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The Supreme Court has emphasized that summary judgment is a useful tool for

isolating and terminating factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). In plain terms, summary judgment "is the 'put up or shut up'

moment in a lawsuit, when a party must show what evidence it has that would convince a

trier of fact to accept its version of events." *Johnson v. Cambridge Indus*., *Inc*., 325 F.3d

892, 901 (7th Cir. 2003); *see also City of Mt. Pleasant, Iowa v. Associated Elec. Co-op.

Inc*., 838 F.2d 268, 273 (8th Cir. 1988) (summary judgment motions "can be a tool of

great utility in removing factually insubstantial cases from crowded dockets, freeing

courts' trial time for those cases that really do raise genuine issues of material fact.").

Rule 56 further requires the Court to enter summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."

*Miniero v. Craven*, slip op., 2008 WL 1994871 at *2 (D. Idaho May 6, 2008) (quoting

*Celotex*, 477 U.S. at 322).

## IV. ARGUMENT

A.     <u>**The Court must dismiss Plaintiff's claim for violation of the ADEA.**</u>

Plaintiff brings Count Three of his Complaint under the ADEA, 29 U.S.C., § 623,

et seq.., which defines the contours of an employee's right to assert a claim for

discrimination on the basis of age.

"The ADEA prohibits an employer from, among other things, 'discharging' an

employee who is over forty years of age 'because of' the employee's age." *Sheppard v.*

*David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (quoting 29 U.S.C. §§

623(a)(1), 631(a)).

> To establish a prima facie case of [ADEA] discrimination, a plaintiff must
> allege in her complaint that: (1) she was at least forty years old; (2) she was
> performing her job satisfactorily; (3) discharged; and (4) "either replaced by
> [a] substantially younger [employee] with equal or inferior qualifications or
> discharged under circumstances otherwise giving rise to an inference of age
> discrimination."

*Sheppard*, 694 F.3d at 1049 (alterations in original) (quoted source omitted).

Plaintiff's claim that City violated the ADEA by "forcing" him to retire from the

BPD, due to his age, through an allegedly hostile work environment created by Chief Lee

fails upon the record and any reasonable inferences drawn therefrom. (Am. Compl. [Dkt.

1 Ex. E] at ¶¶ 24, 39-40, 60-66.) For purposes of this motion, the first two elements are

not contested. Rather, it is the last two elements, discharge (i.e., constructive discharge)

and replacement by a younger employee or under circumstances giving rise to an

inference of age discrimination, that fail upon the undisputed record.

  1. <u>Plaintiff cannot, as a matter of law, establish that he was constructively discharged.</u>

The City did not take official action to terminate Plaintiff's employment; instead, Plaintiff elected to retire seven (to nine) months early and take a new job at BSU. SMF ¶¶ 29-30. Thus, Plaintiff's ADEA claim is limited to one based on the legal theory of constructive discharge.

> [C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become <u>sufficiently extraordinary and egregious</u> to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (emphasis added) (quoting *Brooks*, 229 F.3d at 930). Said another way, the employee's "working conditions [must have been] so poor that they trumped his motivation to earn a living." *Id.* at 1185. This is not an easy claim to make plausible.

> [The Ninth Circuit has] set the bar high for a claim of constructive discharge because <u>federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable.</u> *Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir. 1986); *see also Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("<u>An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.</u>").[1]

*Poland*, 494 F.3d at 1184-85 (emphases added; footnote omitted). "Because [the courts]

---

[1] This quoted portion of *Tidwell* is significant because here, Plaintiff did not "giv[e] his employer a reasonable chance to work out [the alleged] problem." Plaintiff cannot point to any formal complaint or grievance submitted during his employment by the City. Furthermore, though given the opportunity to voice any complaint to OPA in the timeframe immediately following statements which Fleming now contends were discriminatory, Fleming said nothing. SMF ¶ 16.

require job conditions to be worse than those which a reasonable person could tolerate,

'an employee may not be unreasonably sensitive . . . .'" *Id.* at 1185 (quoting *Serrano-Cruz v. DFI P.R., Inc.*, 109 F.3d 23, 26 (1st Cir. 1997)) (bracket and ellipsis omitted).

To raise this already high bar, "a plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996)). When the aggravating factor is such a pattern of discriminatory treatment, months or years of such treatment are typically required. *Id.*

While it is true that constructive discharge is generally an issue for trier of fact, the high bar for constructive discharge makes it a common candidate for dismissal upon summary judgment due to insufficient proof. *See, e.g., Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (noting that constructive discharge is "is normally a factual question for the jury" but nevertheless finding that the facts submitted by the employee "were insufficient as a matter of law to sustain a finding" for constructive discharge).

Additional cases demonstrate how the present case fits into this same category: even assuming Plaintiff's facts as true, those facts do not show that "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" *Schnidrig,* 80 F.3d at 1411 (quoted source and brackets omitted).

For example, in *Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007), the Ninth Circuit overturned the district court's determination after a bench trial that Plaintiff had proved constructive discharge. 494 F.3d at 1177. The plaintiff in *Poland* was a U.S.

Customs Service's agent with a supervisory role in Portland, Oregon. *Id.* The employee was required to report to a superior located in Denver. *Id.* The employee was then approximately 49 years old. *See id.* It was undisputed that his superior made numerous, overt comments about the employee being too old and about the desire to hire younger agents in the Portland office. *Id.* at 1177-78. The superior also circulated retirement surveys. *Id.* at 1178. As a result, the employee filed an age discrimination complaint.

Meanwhile the employee had received negative performance reviews and was denied requests for promotions and a request to reassign an agent. *Id.* After a separate inquiry found the employee engaged in unprofessional conduct, the employee was transferred to Virginia into a non-supervisory role. *Id.* The employee acquiesced; his pay and benefits remained the same. *Id.* After five months in Virginia, the employee announced he would take early retirement, worked three more months, and then retired three years early. *Id.* The employee then filed a lawsuit, alleging that the U.S. Customs Service constructively discharged him because he had filed the age discrimination complaint. *Id.* at 1179. The district court agreed and after a bench trial ruled "that the Customs Service violated the ADEA by constructively discharging him." *Id.*

The Ninth Circuit disagreed and reversed this finding and focused largely on the amount of time that the employee continued to work[2]:

> Under the facts found by the district court, [the employee] was not, as a matter of law, constructively discharged. Neither the district court's factual findings nor any other evidence in the record indicates that [the employee]'s working conditions in Virginia were so poor that they trumped his motivation to earn a living. In fact, [the employee] worked in Virginia for five months before deciding to retire. Even after he decided to retire, [the

---

[2]    In *Poland*, the absence of decreases in salary or benefits also contributed to a finding no constructive discharge. *Id.* at 1185. Plaintiff can point to no reduction in salary or benefits. The court in Poland even disregarded the demotion to a non-supervisory position. *Id*. Here, Plaintiff decided to retire without any demotion occurring.

employee] worked the same job for three more months. As a matter of law, these are not the actions of someone who finds his working conditions so intolerable that he felt compelled to resign.

*Id.* at 1185. A similar factual scenario exists here—and therefore the attendant reasoning undermining the existence of a constructive discharge—is equally applicable.

Plaintiff testified that the sole comment about his knee surgery was in early December 2021. SMF ¶¶ 9-11.  Comments about retirement occurred between December, 2021 and March, 2022. SMF ¶¶ 12-15. In between, on February 28, 2022, Fleming participated in an interview with the Office of Police Accountability regarding complaints made by <u>other</u> individuals against Chief Lee. SMF ¶16.  Despite invitation, Fleming made no particular complaint as to himself. *Id*.  The accusations of "a racist act" occurred in April 2022. SMF ¶ 18.  This was also when Plaintiff "made the decision that [he] was going to leave" his job with BPD. SMF ¶ 18.  Fleming then changed his mind and agreed to stay after a discussion with Cpt. Ruffalo and DC Brooks. SMF ¶ 19.

As *Poland* instructs, this timeline is telling. Plaintiff first decided to leave in April 2022 but did not retire until July 15, 2022. SMF ¶¶ 18-21. His retirement was approximately 8 months after he states comments were made about his knee surgery and three months after the April conversations of which he now complains. Accordingly, as held in *Poland*, "[a]s a matter of law, these are not the actions of someone who finds his working conditions so intolerable that he felt compelled to resign." 497 F.3d at 1185.

Also instructive is *Huskey v. City of San Jose*, 204 F.3d 893 (9th Cir. 2000),[3] wherein the Ninth Circuit reversed the district court's denial of summary judgment, and

---

[3]    While this case was situated in the context of a § 1983 claim, the same constructive discharge law used in ADEA cases was used to find that summarily dismissing the constructive discharge claim was appropriate. *Huskey*, 204 F.3d at 900 (quoting and relying on *Schnidrig*, 80 F.3d 1406, an ADEA constructive discharge case).

instead ruled that the employee attorney failed to present adequate facts to prove

constructive discharge. *Huskey*, 204 F.3d at 902. The court in *Huskey* reasoned:

> The record shows that [the employee attorney] was not demoted or disciplined, nor did he receive a cut in pay. Although [his superior] once responded affirmatively when [the employee attorney] asked her if he should leave the Office, she explicitly stated in [a later] memo to [the attorney employee] that he was "welcome to stay in this Office."

*Id.* at 901.

As noted, Plaintiff can point to no demotion, discipline, or reduction in salary or

benefits. In addition, Plaintiff specifically testified that his direct supervisor, DC Brooks

expressed trust and a desire for Plaintiff to stay as long as possible and later, together

with Cpt. Ruffalo, convinced Plaintiff to stay. SMF ¶¶ 14, 18. Plaintiff responded that he

would stay (*id.* at 64:9-11), a fact which, based on *Poland*, is not "the action[ ] of

someone who finds his working conditions so intolerable that he felt compelled to

resign." 497 F.3d at 1185.

While not binding, the Idaho Supreme Court case *Hatheway v. Board of Regents

of the University of Idaho*, relies on the same cases cited herein, including *Poland* and

*Huskey*. 155 Idaho 255, 265, 310 P.3d 315, 325 (2013). In the context of age

discrimination, the employee in *Hatheway* claimed constructive discharge because the

university paid a newer and younger employee a higher salary than the plaintiff

employee, the president of the university spoke about the need for older employees to

retire, the employee was not informed of certain communications, her work area was

changed without notice, and some of her essential job functions were taken away. 155

Idaho at 265, 310 P.3d at 325. Relying on *Huskey*, the Idaho Supreme Court found that,

even when taking all of the evidence in light most favorable to the employee, she failed

to raise a material issue of fact that she was constructively discharged. *Id.* In essence, an unfriendly and "cold working relationship with [a] supervisor" did not, as a matter of law, amount to constructive discharge. *Id.*

Finally, in *Schnidrig v. Columbia Machine Inc.*, 80 F.3d 1406 (9th Cir. 1996), the employee, an executive officer, claimed his employer "constructively discharged him by making working conditions so intolerable that he felt forced to resign." *Id.* at 1411. The employee offered six facts to support his claim of constructive discharge: he was replaced by someone 15 years younger; he was not given a new position; another executive employee was given a pay raise causing that person's pay to be higher than his; he was required to move into a smaller office;  he was excluded from lunch meetings; and other executives were told not to speak to the employee about financials or other matters. *Id.* Despite all of these reasons, the Ninth Circuit upheld the summary judgment finding of no constructive discharge.  *Id.*

Here, Plaintiff stated that he last made his decision to retire when he no longer felt welcome because Chief Lee had stopped "BSing" with him and only came to him for official business. SMF, ¶ 21.  However, *Schnidrig* makes it clear that exclusion from even work-related items such as meetings and financial discussion does not establish constructive discharge. Also like *Schnidrig*, Plaintiff can point to no evidence that he was disciplined, demoted, or suffered a pay cut. Finally, although Plaintiff was asked about retirement, he was not requested or encouraged to do so.[4] SMF ¶¶ 12-15, 18-19.  Rather, DC Brooks twice expressed a desire for him to stay and Lee's comments, when viewed in

---

[4]    *See McCoy v. Barrick Gold of N. Am., Inc.*, 705 F. App'x 645, 646 (9th Cir. 2017) ("Asking an employee who is eligible for retirement and performing unsatisfactorily about retirement does not give rise to an inference of age discrimination.").

context, were made for legitimate business purposes or following a professional

disagreement where Fleming expressed dissatisfaction with his [Lee's] decision as to

handle a particular investigation or presentation. *Id*. Consequently, there are no facts, nor

reasonable inferences that support Plaintiff's claim of constructive discharge.

In sum, Plaintiff alleges isolated, stray comments to support his claim of

discrimination.  These actions, viewed in isolation or even cumulatively, do not amount

to intolerable working conditions they are not "extraordinary and egregious," and they

are not "aggravating factors, such as a continuous pattern of discriminatory treatment."

*See e.g., Wallace, supra.*  At most, Plaintiff can show that he worked for a direct, if not

critical, boss with a different approach to leadership. SMF ¶¶ 5-6.  However, that is not

the standard for a constructive discharge.

Consistent with the holdings in *Poland, Huskey, Hatheway,* and *Schnidrig*,

Plaintiff cannot establish facts nor reasonable inferences to support a claim that he was

constructively discharged when he elected to retire and take a position at BSU.

2. <u>Plaintiff has not established the prima facie element that he was replaced by a
substantially younger employee with equal or inferior qualifications.</u>

Plaintiff has baselessly alleged "upon information and belief" that he was

replaced by a younger employee subsequent to the suggested constructive discharge.

(Am. Compl. at ¶ 63.) While that allegation may have been sufficient to defeat a motion

to dismiss, it does not establish a triable issue of fact on this fourth element, and Plaintiff

has not produced such evidence, namely because it did not occur.

This fourth element may be proved in two ways; however, in this case, proof of

the substantially younger replacement is required.[5]  As to the first, this element requires

evidence that Plaintiff was "replaced by [a] substantially younger [employee] with equal

or inferior qualifications . . . ." *Sheppard*, 694 F.3d at 1049. Importantly, "substantially

younger" is defined as meaning someone younger than forty (i.e., the protected class) and

at least ten years younger than the discharge employee. *See, e.g.*, *Diaz v. Eagle Produce,

Ltd.*, 521 F.3d 1201, 1209 (9th Cir. 2008) (citing *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887,

893 (7th Cir. 1997)); *Kalagian v. Carwein*, No. 93-17071, 1995 U.S. App. LEXIS 13050,

at *3-4 (9th Cir. May 26, 1995); *Mitchell v. Nielsen*, No. CV 16-7695 PA (MRWx), 2018

U.S. Dist. LEXIS 76859, at *15-16 (C.D. Cal. May 7, 2018).

Here, the individual who assumed Plaintiff's employment role after he retired is

50 years old. Decl. of Jeff Niiya, ¶ 2.  Plaintiff's failure of proof upon this fourth essential

element of his ADEA claim is dispositive. *See, e.g.*, *Kunz v. Smith's Food & Drug Ctrs.

Inc.*, 497 F. App'x 746, 747-48 (9th Cir. 2012); *Mitchell*, 2018 U.S. Dist. LEXIS 76859,

at *15-16; *Morley v. J.W. Robinson's, Inc.*, No. 91-55301, 1992 U.S. App. LEXIS 16645,

at *6 (9th Cir. July 10, 1992); *Landon v. Ply-Gem Windows*, No. C23-1747JLR, 2024

U.S. Dist. LEXIS 6236, at *8-9 (W.D. Wash. Jan. 11, 2024); *Kalagian*, No. 93-17071,

1995 U.S. App. LEXIS 13050, at *3-4. Plaintiff likewise lacks any evidence regarding

the "equal or inferior qualifications," which also defeats this claim.

---

[5]     The second method of proof for this fourth element—which permits proving a
discharge "under circumstances . . . giving rise to an inference of age discrimination"—is
only available when the employer has had a "general reduction" in workforce, which did
not occur here. *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 n.2 (9th Cir. 2008)
("Generally, an employee can satisfy the last element of the prima facie case only by
providing evidence that he or she was replaced by a substantially younger employee with
equal or inferior qualifications. *Id.* The test for the prima facie case changes somewhat,
however, where a discharge occurs in the context of a general reduction in the employer's
workforce." (emphasis added)).

For these reasons, Plaintiff is unable to establish the third and fourth elements of the prima facie case for ADEA age discrimination. The claim must be dismissed.

**B. The Court Must Dismiss Plaintiff's Claim for Violation of the ADA.[6]**

Plaintiff brings Count Two of his Complaint under the ADA, 42 U.S.C. § 12112, et seq., which defines the contours of an employee's right to assert a claim for discrimination on the basis of disability.

> In order to qualify for relief under the ADA, the plaintiff must show that: (1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability.

*Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156-57 (9th Cir. 2000) (emphasis added) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). Plaintiff's failure to establish any one of these elements defeats his ADA claim in its entirety. *Thoma v. City of Spokane*, No. CV-12-0156-EFS, 2014 U.S. Dist. LEXIS 187536, at *4 (E.D. Wash. June 30, 2014) (citing *Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998)).

Plaintiff's ADA claim fails as a matter of law because he cannot establish the first or third elements of his ADA claim: namely, that he was disabled under the statute or that

---

[6] As discussed more fully below in Section D, because Plaintiff cannot establish a hostile work environment, his claims for constructive discharge necessarily—and legally—fail as well. This is because constructive discharge is subject to a higher burden than establishing a hostile work environment. *Chenoweth v. Maui Chem. & Paper Prods.*, 357 F. App'x 875, 876 (9th Cir. 2009) ("The district court also properly determined that because [plaintiff] failed to establish a triable issue concerning hostile work environment, his constructive discharge claim necessarily failed. *See Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for [him] to meet the higher standard of constructive discharge[.]")). *See also Sheridan* at *21-22 (citing *Brooks* for the same rule).

adverse employment action in the form of constructive discharge occurred because of any alleged disability. These shortcomings are addressed in turn.

1.  Plaintiff was not disabled under statute.

*Braunling* makes it clear that in order to obtain relief under the ADA, the claimant must be disabled by statutory definition. However, a minor, transitory injury is excluded from that definition, which is what Plaintiff had with his knee surgery. This prevents him from succeeding on his ADA claim. The Eastern District of Arkansas has addressed this issue with respect to a knee surgery:

> A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102 (3)(B). In other words, an employee who would otherwise be defined as disabled for purposes of the ADA because the employee was regarded as disabled by the employer is not disabled under the ADA if the employee's actual impairment lasted less than six months, regardless of how long the impairment was expected to last. *See, e.g., Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 303 (5th Cir. 2020) (holding that the plaintiff's impairment "was objectively transitory and minor by her own admission, because the actual or expected duration of any impairment . . . was less than six months").

*Bledsaw v. McGeorge Contracting Co.*, No. 4:23-cv-00358-KGB, 2024 U.S. Dist. LEXIS 59452, at *7-8 (E.D. Ark. Mar. 30, 2024) (emphases added).

Here, Plaintiff only took two weeks off for his knee surgery; in fact, he started working from home within a week after his surgery. SMF, ¶ 9. While Plaintiff may subjectively claim the full recovery process took a year, by his own admission he was not impaired and was able to work his desk-job remotely within one week and in-person only two weeks after his surgery—significantly less than the statutorily required six months. SMF ¶ 9. Thus, like in *Bledsaw*, there is an absence of a statutory disability, and the ADA claim fails.

2.  <u>Plaintiff has not suffered an adverse employment action.</u>

Initially, it is not contested that constructive discharge, if proved, is an adverse

employment action for purposes of the ADA. *See e.g. Jordan v. Clark*, 847 F.2d 1368,

1377 n.10 (9th Cir. 1988). In any event, Plaintiff cannot show such a constructive

discharge. The legal principles and rules set forth above regarding constructive discharge

in the ADEA (and other) contexts also apply to constructive discharge in ADA claims.[7]

As a result, Plaintiff cannot establish constructive discharge as the adverse employment

action for all of the same reasons set forth in section A.1. above.

Indeed, courts regularly rely on this inability to establish constructive discharge to

dismiss a constructive discharge claim within the context of the ADA as well. *See, e.g.*,

*Atwood v. Consol. Elec. Distribs.*, Inc., 231 F. App'x 767, 769 (9th Cir. 2007);

*Chenoweth*, 357 F. App'x at 876; *Sheridan v. Providence Health & Servs.-Oregon*, No.

10-cv-775-PK, 2011 U.S. Dist. LEXIS 149586, at *20-21 (D. Or. Dec. 29, 2011)

(granting summary judgment dismissing the constructive discharge theory despite the

claims that the employee was  denied advancements, placed on unreasonable work plans

designed to ensure failure, and that management methods were aggravating the

employee's disability); *See also Hunter v. Home Depot U.S.A, Inc.*, 270 F. App'x 654,

655-56 (9th Cir. 2008).

In *Atwood*, for example, the court held "[t]he mere fact that [the employee] felt

that his termination was inevitable is not enough to reach a constructive discharge." 231

F. App'x at 769.  As in *Atwood*, Plaintiff relies upon a subjective and conclusory assertion

---

[7] *See, e.g.*, *Atwood*, 231 F. App'x at 769 (utilizing the "sufficiently extraordinary and egregious" standard); *cf. Cooper v. Neiman Marcus Grp.*, 125 F.3d 786, 790 (9th Cir. 1997) (holding the constructive discharge doctrine did not apply to the subject facts because the employer terminated employment).

that "[Chief Lee] didn't want [Plaintiff] there much longer." SMF ¶ 13.  As *Atwood*

makes clear, Plaintiff's subjective and prospective presumption does not amount to

constructive discharge. Accordingly, based on the cases cited in this section and above in

subsection A.1., Plaintiffs ADA claim must fail.

> 3.  <u>Plaintiff's ADA claim should be dismissed because he cannot establish the requisite but-for causation.</u>

The third element to Plaintiff's ADA claim also requires "that [ ]he suffered an

adverse employment action <u>because of</u> h[is] disability."*Braunling*, 220 F.3d at 1156-57.

The causation requirement in ADA cases is the most burdensome: "an ADA

discrimination plaintiff bringing a claim under 42 U.S.C. § 12112 must show that the

adverse employment action would not have occurred <u>but for</u> the disability." *Murray v.*

*Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (emphasis added). Plaintiff cannot

meet this burden.

The causation requirement continues to apply in the context of constructive

discharge. *See Rodriquez v. Salinas City Sch. Dist.*, No. 98-17027, 2000 U.S. App.

LEXIS 5900, at *6 (9th Cir. Mar. 30, 2000) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d

1477, 1481 (9th Cir. 1996)). In turn, the alleged disability-related discrimination and

harassment must be the but-for cause of the unbearable, "extraordinary and egregious"

work environment "forcing" Plaintiff to retire.

In this case, not only is the evidence of disability-related discrimination (or

harassment) non-existent,[8] the fact that Plaintiff has also alleged age-related

---

[8]    Plaintiff testified about <u>one</u> conversation with Chief Lee about his knee and limp. SMF ¶ 10-11. Within that conversation, Chief Lee first made sure that Plaintiff was not in too much pain and was able to work (which is in no way discriminatory or harassing); second, Plaintiff categorized the Chief as "jokingly" inquiring if Plaintiff could even make it to retirement age. SMF ¶ 11; *but see also* SMF ¶ 6 (stating Lee's attempt at

discrimination, and retaliatory conduct due to protective activity wholly undermines Plaintiff's ability to claim the constructive discharge <u>would not have occurred but for [his] disability</u>." *Murray*, 934 F.3d at 1105. Simply put, Plaintiff's multiple reasons as to why he was forced to retire preclude his claim that he retired solely because of alleged disability discrimination.

In conclusion, Plaintiff cannot establish a statutory disability, nor triable issues for constructive discharge or the requisite causation for his ADA claim. Summary judgment dismissing the claim is therefore appropriate.

**C.    Plaintiff's alleged violation of the Idaho Human Rights Act (IHRA) should be dismissed for the reasons set forth in subsections A & B above.**

Plaintiff's Fourth cause of action, like his ADEA and ADA claims, alleges age and disability discrimination, pursuant to the Idaho Human Rights Act (IHRA) as opposed to federal law. (Am. Compl. At ¶¶ 67-76.) The Idaho Supreme Court recognizes that the IHRA is governed by federal precedent. *Hatheway*, 155 Idaho at 262, 310 P.3d at 322.  Consequently, the authority and rationale set forth in subsections A and B above demonstrate the Plaintiff's concomitant discrimination claims under Idaho law fail for the same reasons.

As briefed above, Plaintiff's IHRA claim for age discrimination also fails for want of constructive discharge and the inability to prove that the position was filled by a younger person of equal or lesser qualifications. Indeed, *Hatheway* cites these same unmet elements and, as discussed above, also found that constructive discharge was not present as a matter of law. 155 Idaho at 262-63, 310 P.3d at 322-24.

---

humor "doesn't faze me much anymore").  As discussed below in the section addressing hostile work environment, these allegations are insufficient as a matter of law to even rise to the lower standard of a hostile work environment and are therefore not harassing.

As with the ADEA, federal ADA precedent applies to the IHRA claim for disability discrimination. *Stansbury v. Blue Cross Health Serv.*, 128 Idaho 682, 685, 918 P.2d 266, 269 (1996). As a result, the arguments and authorities set forth in subsection B apply equally to Plaintiff's IHRA claim and, as applied, require dismissal of Plaintiff's IHRA claim for age and disability discrimination.

**D.    Plaintiff's unpled claim for hostile work environment fails as a matter of law.**

Interwoven by inference throughout his complaint, Plaintiff's hostile work environment claim fails for want of proof and procedure. First, Plaintiff has not supplied a "short and plain statement of the claim" pursuant to Rule 8(a)(2) for a hostile work environment that includes each element thereof. *See Woodroffe v. Lincoln Cty. Cmty. Justice*, No. 6:21-cv-01053-IM, 2021 U.S. Dist. LEXIS 220099, at *7 (D. Or. Nov. 10, 2021) ("Compliance with Rule 8 therefore requires a plaintiff to plead a short and plain statement 'identifying the . . . occurrence[s] giving rise to the claims and the elements of a prima facie case' for each claim alleged." (emphasis added) (quoting *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000)). Because Plaintiff has failed to appropriately allege a specific claim and the elements for a hostile work environment, this Court should preclude him from asserting such a cause of action.

Even if the Court were to conclude that Plaintiff has adequately pled a claim for hostile work environment, the claim cannot survive summary judgment.

> To assert a hostile workplace claim under the ADEA, Plaintiff must meet the same requirements as for a hostile workplace claim under Title VII: the existence of severe or pervasive and unwelcome verbal or physical harassment because of a plaintiff's membership in a protected class.

*Sheridan,* 2011 U.S. Dist. LEXIS 149586, at *13 (citing *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other*

*grounds as recognized in* 424 F.3d 1027 (9th Cir. 2005)). While there are three elements

to a claim for a hostile work environment, the focus is on the third: that the unwelcome

conduct must be "sufficiently severe or pervasive to alter the conditions of the plaintiff's

employment and create an abusive work environment." *Vasquez v. Cty. Of L.A.*, 349 F.3d

634, 642 (9th Cir. 2003).

> To determine whether conduct was sufficiently severe or pervasive . . . [the
> courts] look at all the circumstances, including the frequency of the
> discriminatory conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and <u>whether it unreasonably
> interferes with an employee's work performance</u>. In addition, the working
> environment must <u>both subjectively and objectively be perceived as
> abusive</u>.

*Vasquez*, 349 F.3d at 642. (emphases added) (citation footnotes and quotation marks

omitted). Given this heightened requirement for abusive conduct, courts are willing to

grant summary judgment when the facts do not demonstrate the requisite severity.

 In *Vasquez*, the Ninth Circuit upheld the dismissal of the plaintiff's hostile work

environment claim, holding that plaintiff's proof, consisting of yelling and offensive

comments, even if true, were insufficient to support a viable claim for relief. *Id*., at 644.

More particularly, that "harassing incidents, which occurred over the course of more than

one year and only two of which contained racially related epithets, did not create a hostile

work environment . . . ." *Id.*

 Similarly, in *Chenoweth,* 357 F. App'x at 876, the Ninth Circuit reiterated that

"pranks, jokes, and name-calling were" not "sufficiently severe or pervasive to alter the

conditions of [his] employment and create an abusive work environment." (quoting

*Vasquez*, 349 F.3d at 642). The *Chenoweth* court continued:

> the working environment must be both objectively and subjectively
> offensive, the alleged harassing conduct must <u>be extreme, and simple</u>

> teasing, offhand comments, and isolated incidents generally will not amount
> to discriminatory changes in the "terms and conditions of employment").

*Id.* (analyzing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (emphasis added)).  Indeed, the U.S. Supreme Court has held "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment . . . ." *Harris v. Forklift Sys.*, 510 U.S. 17, 18, 114 S. Ct. 367, 369 (1993) (citation omitted).

Similarly, in *Sheridan*, the court, in entering summary judgment, held that allegedly harassing conduct that did not involve physical threats, included a few discriminatory comments, and excessive supervision did not rise to the objective and subjective requirements for extreme, severe, or pervasive harassment. *Sheridan*, 2011 U.S. Dist. LEXIS 149586, at *12 and *19. The *Sheridan* court reasoned that these instances did not meet the objective severity level required, because "whether a workplace is objectively hostile is not met by the Plaintiff's subjective feelings about her supervisor's motives or perceptions of her supervisor's conduct." *Id.* at *16. Yet the subjective feeling is precisely what Plaintiff relies upon here. (*See, e.g.*, Fleming Dep. at 49:22-24 (Plaintiff presumed Chief Lee "didn't want [Plaintiff] there much Longer.").

This case parallels *Vasquez*, *Chenoweth*, and *Sheridan*.  The alleged conduct includes one instance where Chief Lee stated that "a racist act" had been committed by Plaintiff, and additional offhand comments about retirement. *See, e.g.*, SMF ¶¶10-15; 18-20. These amounted to a few isolated incidents. This is precisely the type of "simple teasing, offhand comments, and isolated incidents [that] will not amount to discriminatory" conduct. As such, even with Plaintiff's testimony taken as true, he fails to demonstrate severe and persuasive harassment that might give rise to a hostile workplace.

**E.    Plaintiff's alleged violation of the Idaho Protection of Public Employees Act (IPPEA) should be dismissed because Plaintiff cannot prove any adverse action nor the required causation.**

Plaintiff's remaining claim, count one, alleges that the City took adverse action against him, in the form of constructive discharge, because he engaged in protected activity under the IPPEA. (Am. Compl. at ¶¶ 43-50.)  The instances of "protected activity" alleged by Plaintiff are not specified in Count I of the Complaint but appear to be his participation in (1) the Tim Green investigation; (2) the Rush Incident; (3) an interview with OPA regarding Chief Lee; and (4) an investigation into an officer's failure to attend human rights training.  Indeed, it was Fleming's job to conduct investigations and thus, his participation in the same does not credibly constitute "protected activity." In any event, and assuming for the sake of argument that Plaintiff was able to sustain his burden to prove protected activity, Plaintiff cannot establish genuine issue of fact for the remaining two prima facie elements required for his IPPEA claim.

In order to defeat summary judgment upon an IPPEA claim, a plaintiff must establish genuine, triable issues of fact upon all three prima facia elements, which are:

> (1) he was an 'employee' who engaged or intended to engage in protected activity; (2) his 'employer' took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action."

*Wright v. Ada Cty.*, 160 Idaho 491, 496, 376 P.3d 58, 63 (2016). As mentioned, it is the final two elements that are utterly absent here.

First is element two, the existence of adverse action. The alleged adverse action in the case is concomitant with Plaintiff's claims for violation of the ADA, ADEA, and IHRA, i.e., threats, harassment, defamation, and forced resignation amounting to constructive discharge.  As discussed at length, and viewing all reasonable inferences in

Plaintiff's favor, Plaintiff cannot sustain his high burden to demonstrate facts giving rise to extraordinary and egregious conduct to support a claim of constructive discharge. As such, based on the arguments already provided, the absence of this adverse action is fatal to Plaintiff's IPPEA claim.

Next, Plaintiff cannot—even with all facts presumed in his favor—established the requisite causation for this cause of action.  In a typical IPPEA case involving formal discharge, the Idaho Supreme Court often denies summary judgment based on causation so long as each party has submitted evidence supporting its reasoning behind (i.e., the causation of) that formal discharge.[9] This rationale is not equally applicable in cases where constructive discharge is claimed, since the defendant will not have an opportunity to "articulate[ ] a legitimate, non-retaliatory reason for discharge." *Berrett v. Clark Cty. Sch. Dist. No. 161*, 165 Idaho 913, 926, 454 P.3d 555, 568 (2019). Accordingly, in this context the plaintiff should be required to present sufficient causation evidence to satisfy the third element: "the existence of a causal connection between the protected activity and the employer's adverse action [of constructive discharge]." *Wright*, 160 Idaho at 496, 376 P.3d at 63.

As reasoned below, the but-for causation standard applies to IPPEA claims.[10] The analysis starts with the fact that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case, forms the legal basis of an IPPEA claim. *Curlee v. Kootenai Cty.*

---

[9]     *See, e.g.*, *Curlee v. Kootenai Cty. Fire & Rescue*, 148 Idaho 391, 396, 224 P.3d 458, 463 (2008); *Berrett*, 165 Idaho 913, 926, 454 P.3d 555, 568 (2019).

[10]     Just as it does to claims brought pursuant to the ADA and ADEA. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (holding that the "because of" language in the ADEA requires proof of "but-for" causation).

*Fire & Rescue*, 148 Idaho 391, 396, 224 P.3d 458, 463 (2008) ("[T]he *McDonnell Douglas* analysis should be applied to actions arising under" the IPPEA.) The U.S. Supreme Court clarified the causation standards used in Title VII cases in *University of Texas Southwestern Medical Center v. Nassar ("Nassar")*, 570 U.S. 338 (2013). *Nassar* held the easier causation standard of "Motivation or substantial factor" applies to Title VII status-based discrimination claims regarding an employees' color, race, religion, national origin, and sex, while the higher but-for standard applies to "Title VII retaliation claims," for retaliation by an employer on account of the employee having opposed, complained of, or sought remedy for unlawful workplace discrimination. *Nassar*, 570 U.S. at 360. ("[T]he Court now concludes as follows: Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test . . . of 'motivating factor.'")

In *Nassar*, the Court discussed the difference between the two standards:

> An employee who alleges status-based discrimination under Title VII <u>need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act</u>. So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was <u>one of</u> the employer's motives, even if the employer also <u>had other, lawful motives</u> that were causative in the employer's decision.

*Nassar*, 570 U.S. at 343. Importantly, this passage articulates how the but-for standard operates: the protected activity must be the reason for termination under the but-for analysis. *Id*. It cannot be merely "one of" the motives. *Id*. The Court's analysis in *Nassar* discussing the reason the easier motivating factor standard is applied to the first type of claim, the status-based discrimination claim, and not the second claim for Title VII retaliation is instructive:

> Since the statute's passage in 1964, it has prohibited employers from discriminating against their employees on any of seven specified criteria. Five of them—race, color, religion, sex, and national origin—are personal characteristics and are set forth in § 2000e-2. (As noted at the outset, discrimination based on these five characteristics is called status-based discrimination in this opinion.) And then there is a point of great import for this case: The two remaining categories of wrongful employer conduct—the employee's opposition to employment discrimination, and the employee's submission of or support for a complaint that alleges employment discrimination—are not wrongs based on personal traits but rather types of protected employee conduct. These latter two categories are covered by a separate, subsequent section of Title VII, § 2000e-3(a).

*Id.* at 347-48. Thus, discrimination on characteristics of a person affords a plaintiff an easier causation burden while retaliation based on conduct is subject to the heightened but-for causation standard.

This reasoning applies equally to Idaho whistleblower claims. Idaho Code § 6-2104 protects conduct, not characteristics of the employee. It protects communications and investigation about waste and rule violations. As such, the but-for causation standard applies to Plaintiff's claim for violation of the IPPEA.

Because the heightened but-for causation standard applies, the analysis set forth above in subsection B.3. governs here as well: Plaintiff claims a myriad of reasons for his alleged constructive discharge, including statements made to him about age, retirement, and his "disability," as well as a separate harassing comment. By Plaintiff's own admission, the protected activity is not the but-for cause of the wrongs he identifies as adverse actions culminating in his constructive discharge, it is but one of a number of factors. As such, his IPPEA claim is properly dismissed for lack of causation.

As further support for this conclusion, Plaintiff's participation in the Tim Green Investigation and the Rush Incident are remote in time and are inconsistent with Plaintiff's sworn testimony that he decided to retire in April or May, 2022, following

comments made in specific circumstances and in completely removed and unrelated

contexts. SMF ¶¶ 18-21. The "racist act" comment to Fleming occurred in the context of

a specific investigation; whereas the comments about retirement that preceded Plaintiff's

decision to retire were either (1) offered in support of Fleming staying or (2) were made

in the context of a professional disagreement. There is no credible link and no reasonable

inferences may be drawn to support a claim that *but for* Fleming's participation in

investigations within the course and scope of his ordinary job duties, that the wrongs

alleged by Fleming would not have occurred. As with his claims for violation of the

ADA, ADEA, and IHRA, Plaintiff's IPPEA claim should be dismissed.

## <u>CONCLUSION</u>

Based on the forgoing discussion and authorities, the City respectfully requests that

this Court grants its motion for summary judgment and enters an order dismissing all of

Plaintiff's claims with prejudice.

DATED this 23rd day of May, 2023.


JONES WILLIAMS FUHRMAN GOURLEY, P.A.


*/s/ Erika P. Judd*
Daniel E. Williams
Erika P. Judd
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of May, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jeffrey J. Hepworth
HEPWORTH LAW OFFICES
2229 W. State Street
Boise, ID 83701-2815
*Attorneys for Plaintiff*
courtservice@idalawyer.com

J. Grady Hepworth
HEPWORTH LAW OFFICES
2229 W. State Street
Boise, ID 83701-2815
   *Attorneys for Plaintiff*
courtservice@idalawyer.com

    */s/ Erika P. Judd*
Erika P. Judd